Ms. Marcy Silkebaken, Chairwoman Municipal Service District of Ponte Vedra Beach Board of Trustees Post Office Box 1323 Ponte Vedra Beach, Florida 32004
Dear Ms. Silkebaken:
On behalf of the Municipal Service District of Ponte Vedra Beach, you ask substantially the following questions:
1. Does the Ponte Vedra Beach Municipal Service District have the authority to levy special assessments pursuant to Chapter 170, Florida Statutes, to fund the construction of a sewer collection system within the limits of the district?
2. Does the Ponte Vedra Beach Municipal Service District have the authority to issue revenue bonds to provide funding for the construction of a sewer collection system?
In sum:
1. and 2. While the Ponte Vedra Beach Municipal Service District may construct a sewer collection system within the district boundaries, it is not a municipality authorized to levy special assessments pursuant to Chapter 170, Florida Statutes, to fund the construction of such a system. The district has the authority to issue revenue bonds to provide funding for the construction of a sewer collection system, with such bonds payable from the revenues from the system.
As your questions are interrelated they will be answered together.
The Municipal Service District of Ponte Vedra Beach (district) was created as an independent special district by special act of the Legislature.[1] The purpose of the district is "to provide services to the public of the district independent of, as well as supplemental to, those services provided by St. Johns County and in cooperation with the function of the county."[2]
To carry out this purpose, the district is authorized to contract, to acquire and convey real and personal property, and to employ agents and employees the board of trustees deems necessary, or to contract for such services.[3] To supplement within the district the performance of certain specialized services and functions of the county, the board of trustees of the district is authorized to provide, among other things, "[u]tilities, including, but not limited to, sewage, water, and lighting[.]"[4] In addition, section 2.4(h) of the district's enabling legislation authorizes the district:
"To acquire, construct, operate, maintain, equip, improve, extend, enlarge or improve capital projects within or without the district for the purposes of enabling the district to perform the specialized public functions or services as herein provided[.]"
Thus, the district has been granted the authority to construct a sewer collection system within the district.
To pay the costs of providing the district's specialized public functions or services, the special act, as amended, authorizes the district to, among other things, levy and assess ad valorem taxes, at a rate not to exceed three mills, and "[t]o fix and collect rates, fees and other charges for the specialized public functions or services[.]"[5] In addition, the district is specifically authorized "[t]o issue tax anticipation notes and revenue certificates secured only by the anticipated revenues of the district[.]"[6]
Accordingly, the district is authorized to provide funding for the construction of a sewer collection system within the district, with the debt service for such bonds to be pledged from the revenues from such a system. Moreover, it appears that the provisions of Part I, Chapter 159, Florida Statutes, the Revenue Bond Act of 1953, may be utilized by the district in issuing the bonds. While the act applies to counties and municipalities, the district's special act provides that the district is authorized "[t]o issue bond anticipation notes and revenue bonds in the manner provided by general law for the issuance of revenue bonds and notes by counties to finance projects of the district[.][7]
You refer to Chapter 170, Florida Statutes, which provides a supplemental and alternative method of making municipal improvements and funding such improvement through special assessments. Section 170.01, Florida Statutes, authorizes the governing body of a municipality to provide for the payment of all or any part of the costs of any improvements, such as sewers, by levying and collecting special assessments. The fact that the district is created by special act of the Legislature does not make it a municipality, nor does the grant of authority in the district's special act. It is a special district created to perform a specialized purpose rather than a municipality created to carry out general governmental functions.[8] As a creature of statute, the district possesses only such powers and authority as have been expressly granted by law or necessarily implied therefrom in order to carry out an expressly granted power.[9]
Unlike a municipality possessing home rule powers, a special district may not impose special assessments in the absence of a grant of authority by the Legislature.[10]
As noted above, the district has been authorized to impose ad valorem taxes, not to exceed three mills. In addition, the district may collect "rates, fees, and other charges" for the services. Special assessments place a special charge on the land based upon the justification that the land derives a special benefit in addition to the general benefit to the public. A special assessment, therefore, is an enforced contribution from a property owner imposed on the theory that the assessed property derives some special or peculiar benefit in the enhancement of value as a result of the improvement or service funded by the proceeds from the assessment.[11]
While the special act authorizes the district to impose "other charges," the phrase "rates, fees, and other charges" generally refers to the imposition of fees or charges for the use of the facility or service rather than a special assessment.[12] In light of the above, it appears questionable whether the grant of authority to fix and collect rates, fees, and other charges encompasses special assessments.
Accordingly, I am of the view that while the Ponte Vedra Beach Municipal Service District may construct a sewer collection system within the district boundaries, it is not a municipality authorized to levy special assessments pursuant to Chapter 170, Florida Statutes, to fund the construction of such a system. The district has the authority to issue revenue bonds to provide funding for the construction of a sewer collection system, with such bonds payable from the revenues from the system.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] See, Ch. 82-375, Laws of Florida.
[2] Section 2(1), Ch. 82-375, supra, as amended by s. 2(1), Ch. 90-463, Laws of Florida.
[3] See, s. 2.(4)(b),(d) and (f), Ch. 82-375, Laws of Florida.
[4] See, s. 2.(4)(g)7., Ch. 82-375, Laws of Florida, as amended by Ch. 90-463, Laws of Florida.
[5] See, s. 2.(4)(j) and (k), supra, as amended.
[6] See, s. 2.(4)(i), Ch. 82-375, Laws of Florida.
[7] See, s. 2.(4)(r), Ch. 82-375, Laws of Florida, as amended by Ch. 90-463, Laws of Florida.
[8] Numerous opinions of this office have consistently stated that special districts and other statutory entities are not municipalities, but are statutory entities created for definitely restricted purposes and not for general local government. See,e.g., Ops. Att'y Gen. Fla. 82-8 (1982), 79-3 (1979), 74-169 (1974), 74-49 (1974), 73-443 (1973), 71-305 (1971), and 69-130 (1969). Cf., Ops. Att'y Gen. Fla. 96-66 (1996) (municipalities, unlike special districts, possess home rule powers and may exercise any power for municipal purposes, except when expressly prohibited by law); 91-93 (1991) (unlike counties or municipalities which have been granted home rule powers, special districts possess no inherent or home rule powers).
[9] See, Halifax Drainage District of Volusia County v. State,185 So. 123, 129 (Fla. 1938); Ops. Att'y Gen. Fla. 96-90 (1996), 89-42 (1989).
[10] Cf., City of Boca Raton v. State, 595 So.2d 25 (Fla. 1992), in which the court recognized that a municipality under its home rule powers could impose special assessments.
[11] See, Sarasota County v. Sarasota Church of Christ, Inc.,667 So.2d 180 (Fla. 1995), holding that a valid special assessment must meet two requirements: property assessed must derive a special benefit from the service provided; and the assessment must be fairly and reasonably apportioned according to the benefits received.
[12] See, e.g., ss. 153.03(3), 153.11-153.14, 153.52(9),190.016(8), 190.035, 240.474(9), 243.22(7), 243.30(1), 315.03, Fla. Stat. And see, Loxahatchee River Environmental ControlDistrict v. School Board of Palm Beach County, 496 So.2d 930, 941
(Fla. 4th DCA 1986), recognizing assessments are "separate and distinct from rates, fees and charges[.]"